OPINION OF THE COURT
William D. Friedmann, J.
This inquest hearing followed defendant’s default in appearing, in an action seeking damages for what can be correctly termed as an extreme case of willful law office failure, or attorney misconduct. It places in focus the civil treble damage provision of the little-known and seldom-used section 487 of the Judiciary Law. Section 487 in total states:
“Misconduct by attorneys
“An attorney or counselor who:
“1. Is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party; or,
*1072 “2. Wilfully delays his client’s suit with a view to his own gain; or, wilfully receives any money or allowance for or on account of any money which he has not laid out, or becomes answerable for,
“Is guilty of a misdemeanor, and in addition to the punishment prescribed therefor by the penal law, he forfeits to the party injured treble damages, to be recovered in a civil action.” (Italicized parts relied upon by plaintiff herein.)
This civil relief is sought at a time when the Bench, Bar, litigants, and legal commentators are occupied with the after effects of Barasch v Micucci (49 NY2d 594) and Eaton v Equitable Life Assur. Soc. of U. S. (56 NY2d 900, revg 81 AD2d 653), and a determination as to what degree of discretion, if any, is retained by our trial courts in excusing ordinary incidents of “law office failure.” (For a random example of recent case comment, see Canter v Mulnick, NYLJ, Aug. 24, 1982, p 6, col 1 [H. G. Schwartz, J.]; Raji v Souri, NYLJ, Sept. 28, 1982, p 6, col 2 [Price, J.]; Kim v Mars Cup Co., NYLJ, Sept. 24, 1982, p 16, col 2 [Jaspan, J.].)
An initial observation based upon this court’s research of the legislative history of section 487 and its predecessor provision and the limited court interpretations, is that section 487 of the Judiciary Law must be carefully reserved for the extreme pattern of legal delinquency, which falls within the restrictive contemplations of that statute.
THE FACTS CONSTITUTING THE MISCONDUCT INVOLVED
Indispensable to a section 487 determination, would appear to be a detailed factual development of what happened. Based upon the evidence adduced at the inquest hearing, and pertinent follow-up events, this court finds that the following occurred.
Plaintiff’s mother died on June 29, 1976. Shortly thereafter, in July, 1976, plaintiff sought the professional advice of defendant, a long-practicing Queens County, New York, attorney, with respect to her mother’s estate. According to plaintiff, defendant advised her that a probate proceeding was not necessary, because all of her mother’s property, both personal and real, passed to her by operation of law. However, defendant did advise her that New York State *1073 would attach a lien to the real property, which had been jointly held by plaintiff and her deceased mother, to cover the payment of New York State estate taxes. Defendant estimated the value of the house and the New York estate taxes, and indicated to plaintiff that $1,200 would cover the payment of taxes to obtain the release of lien, as well as his legal fee. Plaintiff gave defendant a check dated July 27,1976 in the amount of $1,200. The original of said check showed its deposit in defendant’s “Special Account M2Attorney At Law”, and that it was paid on July 28, 1976. Plaintiff further testified that during the period of the summer of 1976 through the spring of 1980, she contacted defendant on numerous occasions. That every time she spoke to defendant, he would assure her that the matter of her mother’s taxes would be taken care of, and that the release of lien would be forthcoming. During May, 1980, plaintiff consulted David M. Daly, Esq., a member of the firm of Emmet, Marvin, and Martin, her attorneys in this proceeding, in order to remove the New York estate lien still on her house. Mr. Daly, on May 22, 1980, wrote to defendant, and requested that he pay the estate taxes on plaintiff’s house, with the funds still in his possession. In June, 1980, Mr. Daly spoke with defendant by phone, and was informed that the matter had been taken care of. When the release was not forwarded, Mr. Daly called defendant again on July 9, 1980, and was informed by defendant that the matter in reality, had not been resolved. Daly confirmed this conversation, and that the matter would be resolved within a week to 10 days. Receiving no documentation from defendant, Mr. Daly again wrote to defendant, on August 1, 1980, and again on August 20, 1980, and spoke to defendant several times during this period on the telephone. Each time defendant promised to remedy the matter immediately. Plaintiff’s new attorneys then ascertained from the State Tax Commission, that they had no record of anything having been filed in plaintiff’s mother’s estate. A form TT-102 was then prepared and filed shortly after September 18, 1980, together with a check drawn on plaintiff’s checking account payable to the Tax Commission, in the amount of $1,666.19. This payment covered estate taxes of $1,092.59, *1074 plus interest in the amount of $573.61. Prior to filing the form TT-102, Mr. Daly again wrote the defendant on September 20, 1980, demanding payment of the taxes of $1,666.19. No answer was received. Defendant was then served with the summons and verified complaint herein on November 23, 1981, seeking damages based upon five causes of action (improper retention of funds, negligence, breach of contract and fiduciary duty and a combination thereof). Defendant thereafter defaulted in appearing, and has never contacted plaintiff or her attorneys to try and resolve this matter. Because of the default this action came on for inquest on July 22, 1982. The testimony of plaintiff and her new attorneys were taken. This court then advised both plaintiff and counsel that it had known the defendant as a practicing attorney for many years, but that this would not in any way affect the rendering of justice herein. At the completion of the inquest, decision was reserved. By letter of August 9, 1982, both defendant and plaintiff’s attorneys were advised that the court had arrived at certain preliminary findings, with respect to items of single damage, but that the court required further advice as to the applicability of section 487 of the Judiciary Law. Specifically:
(1) Is a criminal conviction a condition precedent to civil use of section 487?
(2) How does section 487 apply to defendant’s conduct?
Plaintiff’s attorneys responded — but defendant did not, although a second copy of the court’s direction of August 9, 1980 was forwarded by the plaintiff’s attorneys, with a letter dated September 1, 1982 to defendant at his new office address. Defendant was further advised of the inquest and the court’s concern about the applicability of section 487 of the Judiciary Law, when in early August, 1982, the court by chance bumped into defendant in the courthouse hallway, and reminded defendant of the matter under consideration. This court has had no communication from defendant nor from any representative on his behalf. No official explanation of any kind has been advanced concerning defendant’s action, both before and during this proceeding. /
*1075 PRIMA FACIE CASE — SINGLE DAMAGES
Based upon the above facts as adduced from the record, it is clear that the plaintiff has proved a prima facie case, establishing her right to the following single damage award:

The court must now consider the applicability of section 487 of the Judiciary Law to this damage determination.
SECTION 487 OF THE JUDICIARY LAW
This section was placed in the Judiciary Law by section 123 of chapter 1031 of the Laws of 1965, effective September 1, 1967. It was derived in total from section 273 of the Penal Law of 1909. The legislative jacket indicates that when the. present or new Penal Law was adopted, several sanctions from the old law, including old section 273 were relocated into other more approximate chapters of the consolidated and unconsolidated laws. (E.g. — Election Law was amended to include matter relating to election frauds — Judiciary Law amended to include matter relating to conduct of attorneys.)
Section 487 like its predecessor former section 273 of the Penal Law provides for misdemeanor criminal action, and in addition to the criminal punishment the forfeiture of treble damages to be recovered in a civil action. This court’s first concern in applying section 487 was whether a *1076 criminal conviction was a condition precedent to the civil use of section 487. This query must be answered in the negative.
Only two reported cases deal with this procedural aspect of section 487. In Fields v Turner (1 Misc 2d 679, 681), the defendant contended that a civil action to recover treble damages under section 487 could not be maintained unless the attorney has been “found guilty in a criminal court of the misdemeanor”. The Supreme Court, New York County, rejected the defendant’s contention and held (p 681) that “[n]o such interpretation may be drawn from the language used in the absence of a clear and unmistakable statement that the civil action may be brought only after a criminal conviction”. In People v Connolly (3 AD2d 943), the procedural converse of the Fields situation was presented. In that criminal proceeding for violation of section 273 of the Penal Law (predecessor to section 487 of the Judiciary Law) the court stated that “[i]t is immaterial that section 273 of the Penal Law also provides in the disjunctive that a deceit practiced upon a party is not only a misdemeanor but that the party injured may recover treble damages.” These cases demonstrate a clear willingness to allow an injured party to pursue civil remedies against a delinquent attorney independently and prior to criminal proceedings, if any.
In addition to the Fields and Connolly cases, the commentary contained in McKinney’s treatise on statutes sheds light on the proper application of a statute which provides for both criminal and civil relief. (McKinney’s Cons Laws of NY, Book 1, Statutes.) “Where a penal statute is such that it is a hybrid of civil and criminal remedies capable of definite severance, that part of it which relates to and grants a civil remedy must be read separate and distinct from that part of it which is penal in character and viewed as a separate and independent enactment and construed and interpreted accordingly.” (McKinney’s Cons Laws of NY, Book 1, Statutes, § 275; see, also, § 146.)
APPLYING SECTION 487
Plaintiff contends that defendant violated subdivision 2 of section 487 of the Judiciary Law which states in pertinent part:
*1077 “An attorney or counselor who * * *
“Wilfully delays his client’s suit with a view to his own gain; or, wilfully receives any money or allowance for or on account of any money which he has not laid out, or becomes answerable for,
“Is guilty of a misdemeanor, and in addition to the punishment prescribed therefor by the penal law, he forfeits to the party injured treble damages, to be recovered in a civil action.” (Emphasis added.)
This court reluctantly must agree with this contention. Defendant’s action in taking $1,200 from plaintiff in July, 1976 and his willful refusal to pay the estate taxes for five years, and his willful refusal for the past six years to return the funds to plaintiff, appears to be covered by section 487 of the Judiciary Law as constituting the willful receiving of money which he has not laid out, and is therefore subject to a forfeiture of treble damages.
Defendant’s above actions and his protracted indifference to this proceeding, now pending for the past 10 months, and to this inquest leaves this court without any basis to mitigate these charges, and without any alternative but to apply treble damages and to order the entry of judgment in the sum of $8,070.57 (See Insanity or mental, nervous, or emotional disturbance of attorney at time of alleged wrongful conduct or at time of disciplinary proceedings, as defense to or mitigation of charges, Ann., 96 ALR2d 739.)
CONCLUSION
Section 487 of the Judiciary Law should be applied only to the chronic, extreme pattern of legal delinquency as illustrated by this proceeding and contemplated by this statute.